# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

DANIEL J. CORBETT, on behalf of     :    **CASE NO.  3:07-CV-01273**
himself and all others similarly situated,  :    **AMENDED CLASS ACTION**
                            :    **COMPLAINT**
             Plaintiff,          :
                            :
v.                            :
                            :
BMW OF NORTH AMERICA, LLC,     :    **JURY TRIAL DEMANDED**
                            :
             Defendant.       :

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Plaintiff, Daniel J. Corbett ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned counsel, alleges the following upon personal knowledge as to his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based on the investigation conducted by counsel.

## INTRODUCTION

1.     Plaintiff brings this action both individually, and as a class action, against BMW of North America, LLC ("BMW" or "Defendant"), on behalf of himself and all those who purchased or leased a new or used BMW vehicle equipped with a Zahnradfabrik Friedrichshafen ("ZF") 5HP19 automatic transmission (the "Vehicle" or "Vehicles") in the State of Connecticut, at any time, and whose clutch drum did not engage, thereby resulting in an inability to operate the Vehicles in reverse gear (the "Class").  Excluded from the Class is BMW of North America, LLC ("BMW" or "Defendant"), and any entity that has a controlling interest in Defendant.  Any claims that Plaintiff or any Class Member may have for personal injuries or consequential damages are expressly excluded from this action.

2.     At all times relevant hereto, BMW sold vehicles equipped with the rear-wheel drive ZF 5HP19 transmission (the "ZF Transmission"). The design of the Vehicles is defective because the reverse clutch pack and snap ring in the ZF Tansmissions are unable to withstand the hydraulic pressure exerted inside the clutch drum, which renders the ZF Transmissions inoperable in reverse gear.

3.     BMW had knowledge of the existence of this design defect at the time BMW began selling the Vehicles because BMW had knowledge of the results of design and engineering testing that had been conducted on the Vehicles' components, including the ZF Transmissions, prior to releasing the Vehicles for sale.  As a result of such tests having been conducted, BMW knew, but did not inform Class Members, that the Vehicles they were purchasing were defectively designed.

4.     The existence of the design defect was further confirmed to BMW once BMW began selling the Vehicles.  More specifically, the existence of this design defect was confirmed by BMW's receipt of literally hundreds of complaints from Class Members and specialized BMW mechanics concerning the failure of the ZF Transmissions to operate in reverse.  Remarkably, despite BMW's clear knowledge of the design defect alleged herein, BMW has failed to acknowledge the existence of the design defect in the Vehicles, and has further failed to warn customers and recall the Vehicles in order to retro-fit the Vehicles with non-defective parts.

5.     In failing to inform customers of the design defect in the Vehicles, BMW has violated common and statutory law governing product liability and unjust enrichment.

## JURISDICTION AND VENUE

6.     This action is brought to remedy violations of state common law governing unjust enrichment in connection with BMW's sale of the Vehicles.

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because the claims of Plaintiff and all class members, aggregated together, exceed $5 million, and the citizenship of the Plaintiff (Connecticut) is diverse from the

citizenship of Defendant (New Jersey).  In addition, this court also has jurisdiction over this matter because, at all pertinent times, Defendant has been subject to the restrictions imposed by the common law of the State of Connecticut, with respect to all of the business that it transacts in Connecticut.

8.    Furthermore, this Court has jurisdiction over BMW, a non-resident corporation, because BMW conducts substantial business in this District.  BMW intentionally avails itself of the consumer markets within this District through the promotion, sale, marketing and distribution of BMW's products, and thereby renders the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.    Venue is proper in this Court because Plaintiff and the members of the Class alleged herein are residents of the State of Connecticut, and because the transaction giving rise to the claims asserted herein took place in this jurisdiction.

## THE PARTIES

10.    Plaintiff is a resident of Naugatuck, Connecticut and a citizen of the State of Connecticut. On July 20, 2001, Plaintiff purchased a 2000 model year BMW 323ci that was equipped with a ZF Transmission.  Plaintiff first learned there was a defect in his Vehicle on or about July 8, 2007, when Plaintiff's reverse gear failed. Prior to this date, Plaintiff had no indication or ability to discern that his Vehicle was defectively designed.

11.    Defendant, BMW is a citizen of the State of New Jersey, and sells vehicles in the United States under the BMW brand name. Defendant is a subsidiary of, and wholly owned by, its parent (and only member), Bayerische Motoren Werke Aktiengesellschaft, which is a corporate citizen of Munich, Germany.  BMW maintains its corporate executive offices at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey.

3

## SUBSTANTIVE ALLEGATIONS

### The ZF Transmission Of BMW Vehicles

12.     To understand the design defect in the Vehicles, it is helpful to identify certain transmission components found in the ZF Transmission.

13.     In rear-wheel drive vehicles, such as the BMW Vehicles, a transmission is a device that is connected to the back of the engine that sends power generated by the engine to the rear wheels. The transmission uses a series of gears to power the "drive shaft," which connects the rear of the transmission to the final drive located in the rear axle, which turns the rear wheels. See Figure 1.

**Figure 1 – Rear Wheel Drive Layout**



Rear Wheel Drive Layout

### The Hydraulic System

14.     The transmission's ability to function is dependent on a constant supply of transmission fluid which is maintained under pressure in what is known as the hydraulic system. The hydraulic system, a complex set of passages and tubes, sends transmission fluid under pressure to all parts of the transmission. Every aspect of a transmission's function is dependant on a constant supply of fluid under pressure, and the hydraulic system uses valves to regulate which specific parts of the transmission receive greater or lesser fluid pressure while the transmission is operating.

15.     The valve body is the control center of the automatic transmission.  It contains channels and passages that direct hydraulic fluid to the numerous valves found throughout the transmission, which then activates the proper clutch packs to shift to the appropriate gear for each driving situation.  See Figure 2.

**Figure 2- Valve Body**



16.     The valve body in a transmission contains several valves that supply hydraulic pressure to the clutches to engage each gear. As the computer in the transmission senses the need to change gears, the valve body responds by applying pressure through the valves to the specific clutch packs, which cause the gears to shift. When the valve body directs transmission fluid to a particular valve, the resultant change in pressure will cause a piston to engage a particular gear through the activation of a "clutch pack."

**Clutch Packs**

17.     The gears that move a car are a series of discs and plates that fit inside a clutch drum. This entire assembly is called a clutch pack.  A piston inside the drum is activated by the hydraulic system's fluid pressure which, at the appropriate time, causes the clutch discs to squeeze together so that they become locked and turn as one, which synchronized action causes the car to shift into gears, including reverse gear.

**Figure 3 – Clutch Pack**



## Reverse Clutch Drum

18.     The reverse clutch drum in the vehicles at issue is made of aluminum sheet metal and houses the clutch pack that allows a vehicle to move in reverse.

19.     As shown in Figure 4, the drum contains both clutch plates and discs, which are held in place by a "snap ring." The snap ring serves to retain the clutch plates and discs, constantly applying pressure to the clutch pack. The snap ring is held in place by a groove near the edge of the inside of the reverse clutch drum.  If the snap ring fails or is removed from its groove, the plates and discs are unable to function, and reverse gear will not engage.

**Figure 4 - Reverse Clutch Drum
Assembly**



20.     When the hydraulic system directs high-pressure transmission fluid through the valve to the piston that engages the reverse clutch pack, the snap ring must be designed in a manner that renders it capable of withstanding that hydraulic pressure and squeezing the plates and discs together inside the clutch drum. Absent this process, the car is incapable of operating in reverse gear.

**The Vehicles
Are Defectively Designed**

21.     The Vehicles are defective because they are incapable of operating in reverse gear.

22.     Despite BMW having conducted extensive design and engineering testing, which provided BMW with the knowledge that the ZF Transmissions require significantly greater pressure to operate in reverse gear than is required for the Transmissions to operate in any forward gear, BMW failed to design the Vehicles in a sufficiently robust manner to assure that the reverse clutch drums would be able to

withstand the hydraulic pressure necessary to engage reverse gear.  Because the reverse

clutch drums (which are also sometimes referred to as "center supports") are unable to

withstand the pressure exerted on them by the hydraulic transmission fluid, they shatter

as depicted in Figures 5-7 below, thereby rendering the Vehicles inoperable.

**<u>Figures 5 and 6</u>**







**Figure 7**

23.    The failure of the clutch drum and assembly in the ZF Transmissions does not allow the Vehicles to function in reverse gear, which constitutes a significant safety hazard.

**BMW Had Knowledge**
**Of The Design Defect In The Vehicles**
**At The Time BMW Began Selling The Vehicles**

24.    Extensive design and engineering testing is conducted on all of the vehicles sold by BMW prior to the introduction of those vehicles to market. These tests and their results provide BMW with knowledge concerning BMW vehicles' ability to successfully operate over time.

25.    One component of a BMW vehicle that is tested before a BMW vehicle is introduced to the market is the vehicle's transmission. Because the transmission is one of the most vital components of an automatic rear wheel drive BMW vehicle, the transmission is placed through rigorous testing in an attempt to ensure that the transmission has been designed in a sufficiently robust manner that it will operate properly for the life of a vehicle.

26.     Because the design of the ZF Transmission was tested, BMW knew or, by the exercise of reasonable care, should have known, that the Vehicles were defectively designed because the ZF Transmission is unable to withstand the pressure which reverse gear requires, thereby causing the reverse clutch drum to fail, and the Vehicle to lose its ability to move in reverse.

**The Design Defect in The Vehicles**
**Has Been Confirmed By BMW Purchasers**
**Who Have Filed Complaints With The**
**National Highway Traffic Safety Association**

27.     The existence of the design defect in the Vehicles has been confirmed by numerous owners the Vehicles – many of whom have filed complaints with the National Highway Traffic & Safety Administration ("NHTSA") stating that they have been unable to operate their Vehicles in reverse gear due to this design defect. Relevant excerpts from these NHTSA complaints are set forth below:

| ODI ID Number | Comments |
|---|---|
| 10112958 | THE CONSUMER WAS UNABLE TO SHIFT/ACCELERATE IN REVERSE GEAR. THE DEALERSHIP WAS NOTIFIED, BUT DID NOT RESOLVE THE PROBLEM. |
| 10131795 | I HAVE A BMW 323CI, YEAR 2000. IT HAS AROUND 42000 MILES ON IT. A FEW DAYS AGO, I WAS PARKED IN MY GARAGE. I PUT THE CAR INTO REVERSE AND HIT THE ACCELERATOR, AND THE CAR WENT NOWHERE. IT DIDN'T SHIFT INTO REVERSE AT ALL. I PUSHED THE CAR OUT OF THE GARAGE, AND PUT THE CAR IN DRIVE GEAR. IT WENT FORWARD FINE. I DROVE IT TO THE SHOP AND THEY LOOK AT IT AND SAID I NEED A NEW TRANSMISSION. THIS WILL COST THOUSANDS. ON A BMW WITH ONLY 42,000  MILES ON IT! MY RESEARCH INDICATES THAT THIS IS A PROBLEM THAT IS HAPPENING TO A LOT OF PEOPLE WITH THE SAME CAR AND MODEL YEAR. IT IS CLEARLY A MANUFACTURER'S DEFECT WHICH OUGHT TO BE THE SUBJECT OF A RECALL |

| | |
|---|---|
| 10125013 | THE BMW CAR WAS PARKED, WHEN TRIED TO BACK OUT THE REVERSE GEAR DID NOT WORK. **THIS WAS A SAFETY HAZARD AS THE CAR WAS PARKED DOWN HILL AND CLOSE TO A FENCING. CAR ONLY WORKED IN THE FORWARD DIRECTION AND IT WAS DANGEROUS TO MOVE THE CAR IN THE FRONT DIRECTION. THUS CAUSING SAFETY CONCERN**. THE DEALERSHIP CONFIRMED THAT THE TRANSMISSION NEEDED REPLACEMENT. **ON CONTACTING SEVERAL BMW SERVICE CENTRES, FEW OF THEM INDICATED THAT THE REVERSE GEAR SAFETY PROBLEM IS OCCURING IN SEVERAL OTHER SAME MODEL AND YEAR CAR. THEY INDICATED THIS WAS DUE TO A FAULTY DESIGN IN THE TRANSMISSION OF THE 2000 323I BMW CARS**. |
| 10131508 | I DRIVE A 2000 BMW 323I. I DIDN'T EXPERIENCE ANY PROBLEMS PRIOR TO THE FAILURE. I PULLED OUT OF MY DRIVE WAY AND WENT TO WORK AND WHEN I WAS LEAVING WORK MY REVERSE WAS NO LONGER FUNCTIONING PROPERLY. LUCKILY I COULD GO FORWARD. I TOOK THE CAR TO THE BMW DEALER RECOMMENDED REPLACING THE TRANSMISSION (DEALER WAS VERY COURTEOUS). MANY OWNERS OF THE 2000 BMW 323I HAVE BEEN REPORTING THIS DEFECT, PROBLEM IS NO RECALL, AND THE CONSUMER IS PAYING FOR IT. *NM |

| 10176229 | **AUTOMATIC TRANSMISSION FAILED TO ENGAGE IN REVERSE ON A HILL WITHIN 2 FEET OF ANOTHER CAR**. *NM |
|---|---|
| 10141177 | I CURRENTLY OWN A 2000 BMW 323I WITH 49,000 MILES AND WAS JUST TOLD TODAY THAT MY TRANSMISSION NEEDS TO BE REPLACED, TO THE TUNE OF $5200. I TOOK MY CAR TO THE DEALERSHIP BECAUSE I WAS UNABLE TO REVERSE. IT APPEARS THAT THIS IS A RECURRING PROBLEM WITH SEVERAL OWNERS OF THIS VERY MAKE AND MODEL BASED ON OTHER COMPLAINTS FILED ON DIFFERENT WEBSITE. NATURALLY, MY WARRANTY RAN OUT LAST SUMMER AT 36,000 MILES SO I AM UNABLE TO DO ANYTHING THERE. I BELIEVE THERE IS DEFINITELY A MANUFACTURING PROBLEM HERE WHEN A TRANSMISSION IS FAILING AT LESS THAN 50,000 MILES. I PLAN ON CONTACTING BMW N.A. TO DISCUSS THE OUTRAGEOUS PRICE THAT I HAVE BEEN QUOTED TO SEE IF THEY CAN HELP INTERVENE OR OFFER A SOLUTION. *NM |
| 10160563 | DT*: THE CONTACT STATED THE VEHICLE WOULD NOT GO INTO REVERSE. THE ISSUE WAS INTERMITTENT. THE INDEPENDENT REPAIR SHOP HAS NOT BEEN ABLE TO DETERMINE THE HOW TO FIX THE PROBLEM. |
| 10173230 | MY 2000 BMW 323I WON'T GO IN REVERSE. THE PROBLEM OCCURRED WITH NO WARNING, AS THE CAR HAS BEEN PROPERLY MAINTAINED AND HAS OPERATED PERFECTLY UNTIL TODAY. THE PRESENT MILEAGE IS A LITTLE OVER 60,000. AN ONLINE SEARCH OF THE PROBLEM HAS REVEALED THIS IS A VERY COMMON PROBLEM THAT'S SPECIFIC TO MY MAKE/MODEL/YEAR, YET BMW DISAVOWS ANY RESPONSIBILITY. ESTIMATED REPAIR IS $7,000, WHICH HAS ME FEELING TOTALLY DISGUSTED WITH BMW AS A COMPANY, NOT TO MENTION ITS PRODUCTS, WHICH IT APPARENTLY NO LONGER STANDS |

|  | BEHIND. I CAN ONLY HOPE THE GOVERNMENT WILL TAKE ACTION AGAINST BMW AND FORCE A RECALL. *NM |
|---|---|
| 10162854 | THE CAR IS A 2000 BMW 323I WITH 34,000 MILES. THERE WERE NO PROBLEMS WITH THE CAR/TRANSMISSION PRIOR TO THE REVERSE GEAR SUDDENLY FAILING TO ENGAGE WHILE THE CAR WAS IN TRAFFIC AND NEEDED TO BE REVERSED TO GET OUT OF THE WAY OF ONCOMING CARS. THE REVERSE GEAR CONTINUES TO FAIL, ALTHOUGH THERE ARE NO PROBLEMS DRIVING FORWARD. DEALER STATES THE TRANSMISSION MUST BE COMPLETELY REPLACED TO FIX THE PROBLEM. SIMILAR REPORTS OF TRANSMISSION & REVERSE GEAR FAILURE SPECIFIC TO 2000 BMW 323I LISTED HERE AND OTHER FORUMS. *NM |
| 10175259 | AT 75,000 MILES, THE VEHICLE FAILED TO OPERATE IN REVERSE GEAR. A SEARCH OF THE INTERNET REVEALED MANY OTHER BMW OWNERS THAT HAVE EXPERIENCED THIS SAME FAILURE. THE SOLUTION WAS A >$3,000 CHARGE TO REBUILD THE TRANSMISSION |
| 10177567 | THERE WERE 50 DOCUMENTED TRANSMISSION FAILURES FOR THE 2000 BMW 3 SERIES AUTOMOBILES. THERE ARE UNDOUBTEDLY MORE, BUT THE PEOPLE JUST PAID THE $3000 TO $5000 REPAIR BILL. THERE IS NO COINCIDENCE THAT THESE TRANSMISSIONS ARE FAILING AND BMW KNOWS ABOUT THE PROBLEM, BUT WON'T DO ANYTHING ABOUT IT. |

| | |
|---|---|
| 10180644 | HAD BRAKES AND SUSPENSION REPLACED AND WHILE AT DEALERSHIP THE REVERSE GEAR WENT OUT. THIS IS THE SAME ISSUE I SEE ALL OVER THE INTERNET. ALL OTHER GEARS WORK OTHER THAN REVERSE, WHICH WILL COST 4000 TO REPLACE. *NM |
| 10170419 | WE BOUGHT A 2000 BMW 323I WHICH CURRENTLY ONLY HAS ABOUT 66,000 MILES ON IT. THE CAR WILL SHIFT INTO REVERSE, BUT WILL NOT ACTUALLY MOVE BACKWARDS. IT JUST SITS THERE REVVING. THE CAR WILL DRIVE FORWARD, BUT NOT BACKWARDS. WE WERE TOLD THAT THE TRANSMISSION AND THE TRANSMISSION THERMOMETER NEEDS TO BE REPLACED FOR A COST OF $4500.00. WE'VE DONE ALL THE NECESSARY MAINTENANCE ON THIS VEHICLE. I'VE SEARCHED THE WEB AND FOUND MANY OTHER COMPLAINTS ABOUT THE SAME ISSUE. I FILED A COMPLAINT WITH BMW, BUT OF COURSE, THEY'RE NOT TAKING RESPONSIBILITY. THESE CARS SHOULD HAVE BEEN RECALLED TO REPLACE THE TRANSMISSION. I WAS STRANDED AT WORK WHEN THE CAR BROKE DOWN. NOW, I'M WITHOUT MY CAR AND ALSO DON'T HAVE THE EXTRA MONEY TO PUT TOWARDS A REPAIR OF $4500.00. FOR A HIGH END CAR, THIS IS UNACCEPTABLE. THIS WILL MOST BE MY FIRST AND LAST BMW PURCHASE. |
| 10174424 | MY 2000 323I REVERSE DOESN'T WORK ANYMORE. I STARTED NOTICING PROBLEMS A FEW YEARS AGO BUT EACH TIME I COMPLAINED THEY (NORTHWEST BMW IN RANDALLSTOWN) NEVER FOUND A PROBLEM. I CALLED THE DEALERSHIP AND I WAS QUOTED A FEE OF ~$4500 FOR REPAIR. THIS IS INSANE, I THINK I'VE HAD THIS PROBLEM ALL ALONG AND NO ONE REALLY EVER TOOK THE TIME AT THE DEALERSHIP TO INVESTIGATE PROPERLY. I AM VERY DISHEARTENED ABOUT THE WHOLE SITUATION. |

| | THE BMW MANUFACTURERS SHOULD HAVE RECALLED THIS VEHICLE MODEL SEVERAL YEARS AGO. |
|---|---|

(Emphasis added).

28.     As detailed above, BMW learned of the existence of this design defect because of the extensive design and engineering testing conducted on the ZF Transmission.  BMW's knowledge of the existence of this design defect has now been further confirmed by a staggering number of Class Member complaints concerning this design defect.

29.     Despite such knowledge, and the widespread reports of this design defect, BMW continues to maintain that the Vehicles are not defective, falsely claiming instead that BMW is unaware of any widespread concerns regarding these transmission failures, and denying the existence of the design defect in furtherance of BMW's wrongful attempt to shift the financial burden for repairing or replacing the ZF Transmissions from BMW onto Class Members.  Plaintiff's counsel's investigation has also confirmed that BMW has a policy of not repairing any ZF Transmission.  Rather, BMW has adopted a policy of completely replacing these ZF Transmissions at the expense of the owners of the Vehicles – often at more than twice the amount it would cost to repair them.

30.     Contrary to BMW's publicly expressed position on this issue, however, in June of 2007, BMW issued a Technical Service Bulletin ("TSB"), titled "**Diagnostic for No-reverse Complaint**," which instructed BMW service technicians who encounter a Vehicle involving a "no reverse gear complaint" to check the gear selector switch and then the transmission fluid. If both of these items are in operating condition, the TSB directs the BMW service technician to replace the entire transmission. This Technical Service Bulletin states in relevant part:

DIAGNOSTIC PROCEDURE

1. Check for gear selector switch faults, and repair if needed

2. Check fluid level and condition. Top-off if required.

**3. If you perform all the checks listed above and you find no defect, then the complete transmission needs to be replaced.**

(Emphasis added).

**The Design Defect In The Vehicles
Presents A Significant Safety Risk**

31.    The defectively designed Vehicles pose a significant safety risk to Class Members. The ability of a car to move in reverse is vital to safety. As mentioned above in the Class Member complaints filed with NTHSA, the reverse clutch drums in the ZF Transmissions have failed while most of these Vehicles were in operation, resulting in precarious situations for the Class Members. Such experiences are described in relevant part below:

> The automatic transmission failed to engage in reverse on a hill within 2 feet of another car.

> I lost reverse gear as I was moving backwards...good thing no one was behind me at the time.

> I put the car into reverse but it remained in neutral. We had to push the car out of a busy Sonic.[restaurant]

> I drive the car now because my wife is not strong enough to push this car out of parking spaces.

> No reverse!...Reverse gear is shot I had to be pushed into a parking space.

32.    The foregoing factual scenarios make clear that the design defect in the Vehicles poses a significant safety hazard for Class Members and anyone else who operates the Vehicles. Indeed, even more troubling safety scenarios are illustrated below:

> Reverse gear suddenly failed to engage while the car was in traffic and needed to be reversed to get out of the way of oncoming cars.

16

> The BMW car was parked, when I tried to back out the
> reverse gear did not work. This was a safety hazard as the
> car was parked down hill and close to a fencing.

33. Despite BMW's understanding of the need for the Vehicles to operate in reverse gear, and the serious safety issues presented by the inability of the Vehicles to operate in reverse gear, BMW has nonetheless refused to take action to protect Class Members from a known design defect, which consequently places many lives in danger.

**BMW Misrepresented The
Operating Condition Of The
ZF Transmissions In The Vehicles**

34. Prior to purchasing his Vehicle, Plaintiff read marketing materials and brochures concerning the Vehicles that were prepared and distributed by BMW.

35. In the marketing brochure that was read and relied upon by Plaintiff in deciding to make his purchase of the Vehicle, BMW stated in relevant part:

**Five-speed Steptronic Automatic Transmission**
In "D," Adaptive Transmission Control adapts to driving conditions and environment – even your own driving style. "Sport" mode prompts the engine to shift at higher rpm, for more sporty driving. Steptronic mode lets you upshift or downshift manually with a tap of the lever.

36. These statements, which Plaintiff read and relied on in making his purchase of the Vehicle, constitute affirmative representations regarding the characteristics, uses, benefits and quality of the Vehicle, and in particular, the Vehicles' transmissions.

37. Despite these affirmative representations, BMW failed to disclose in the marketing brochure that Plaintiff read and relied upon in purchasing his Vehicle that the Vehicles suffered from the inherent design defect described herein.

38. Accordingly, the affirmative representations made by BMW concerning the Transmission that are described in ¶ 35 above worked a concealment of the true fact that the Vehicles were, and are, defective.

39.     The defect described herein was contrary to the affirmative representations set forth in paragraph ¶ 35 above.

40.     Furthermore, the defect described herein was a material fact related to the safety of the Vehicles known only to Defendant. Had Plaintiff and members of the Class known about the design defect, they would not have purchased their Vehicles. Defendant, at all relevant times, knew that Plaintiff and members of the Class did not know or could not have reasonably discovered the design defect inherent in the Vehicles prior to purchasing their Vehicles equipped with these defectively designed Transmissions.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action both individually and as a class action pursuant to FRCP 23(b)(2) and 23(b)(3) on behalf of himself and all those who purchased or leased a new or used BMW vehicle equipped with a ZF Transmission in the State of Connecticut, at any time, and whose clutch drum did not engage, thereby resulting in an inability to operate the Vehicles in reverse gear. Excluded from the Class is BMW, and any entity that has a controlling interest in Defendant. Any claims that Plaintiff or any Class Member may have for personal injuries or consequential damages are expressly excluded from this action.

42.     Members of the class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are several thousand purchasers of the defective Vehicles in the State of Connecticut.

43.     There are questions of law and fact common to all the members of the Class that predominate over any questions affecting only individually members, including:

  a.  Whether the Vehicles are defectively designed;

  b.  Whether BMW knew, or was reckless in not knowing, that Vehicles were defectively designed at the times that BMW sold the Vehicles to Class Members;

18

  c. Whether BMW was unjustly enriched by the retention of non-gratuitous benefits conferred by Plaintiff and members of the Class;

  d. Whether BMW's conducted constituted a violation of the Connecticut Products Liability Act based on Defendant's breach of the implied warranty of merchantability;

  e. Whether BMW's conducted constituted a violation of the Connecticut Products Liability Act based on Defendant's negligence; and

  f. Whether as a result of BMW's misconduct, Plaintiff and Class members are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

44. The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and BMW has no defenses unique to Plaintiff.

45. Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation.

46. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

  a. It is economically impractical for members of the Class to prosecute individual actions;

  b. The class is readily ascertainable and definable; and

  c. Prosecution as a class action will eliminate the possibility of repetitious litigation.

47. Plaintiff does not anticipate any difficulty in the management of this litigation.

<u>Count I</u>
**(By Plaintiff, individually, and on behalf of all Class members
who purchased a new or used BMW equipped
with a ZF 5HP19 transmission in the State of Connecticut
for violations of Connecticut Products Liability Act – Breach Of The Implied
Warranty Of Merchantability)**

48.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

49.     This Count is brought against BMW pursuant to the Connecticut Products Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m *et seq.*

50.     At all pertinent times, Defendant is, was and has been a "product seller" within the meaning of the CPLA.

51.     As a result of the defect alleged herein, Plaintiff suffered "harm" as that term is defined in Connecticut General Statute § 52-572m because Plaintiff purchased a defective Vehicle.

52.     Defendant knew or should have known that the Vehicles could not pass without objection in the trade.

53.     Defendant knew or should have known that the Vehicles were not fit for their ordinary purpose of transportation.

54.     Notwithstanding its knowledge, Defendant failed to disclose the defect in the Vehicles.

55.     Defendant's conduct was the direct and proximate cause of the damages suffered by Plaintiff and the Class.

56.     The implied warranty of merchantability is implied in the sale of the Vehicles and requires, among other things, that the Vehicles pass without objection in the trade and are fit for the ordinary purposes for which the Vehicles are used.

57.     The Vehicles are defectively designed due to a defect in the reverse clutch drum in the Transmissions.  The failure of the clutch drum and assembly in the ZF Transmissions does not allow the Vehicles to function in reverse gear, which constitutes a significant safety hazard.

58.     Because of the design defect, the Vehicles did not function in their ordinary capacity and were not merchantable at the time of sale.

59.     Any purported disclaimer of the Implied Warranty of Merchantability on the part of the Defendant is unconscionable and unenforceable.

60.     The defects in the Vehicles rendered them non-merchantable because they could not be used for the ordinary purposes and thereby proximately caused the economic damages suffered by the Plaintiff and members of the class who purchased these Vehicles.  The amount of damages will be ascertained at trial.

## Count II
### (By Plaintiff, individually, and on behalf of all Class members who purchased a new or used BMW equipped with a ZF 5HP19 transmission in the State of Connecticut for violations of Connecticut Products Liability Act –Negligence)

61.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

62.     This Count is brought against BMW pursuant to the CPLA, Conn. Gen. Stat. § 52-572m *et seq.*

63.     At all pertinent times, Defendant is, was and has been a "product seller" within the meaning of the CPLA.

64.     As a result of the defect alleged herein, Plaintiff suffered "harm" as that term is defined in Connecticut General Statute § 52-572m because Plaintiff purchased a defective Vehicle.

65.     Defendant, by and through its agents, employees and representatives, had a duty to exercise reasonable and ordinary care in the design, manufacture and sale of the Vehicles.

66.   Defendant breached its duty to exercise reasonable care in designing, manufacturing, and selling the Vehicles because Defendant knew or should have known of the defect described herein.

67.   Defendant breached its duties by, inter alia, engaging in the following conduct:

    a.  Failing to properly design the Vehicles; and

    b.  Failing to take remedial action to correct the known defect and/or to advise members of the Class as to the existence of the known defect.

68.   Defendant knew or should have known that purchasers of the Vehicles could and would suffer damages as a result of Defendant's failure to exercise ordinary and reasonable care with respect to the Vehicles.

69.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class suffered the harm described above.

70.   As a result of the foregoing, Plaintiff and the Class are entitled to damages and other appropriate relief for violations of the CPLA, in an amount to be proven at trial.

## Count III
### (By Plaintiff, individually, and on behalf of all Class members who purchased a new or used BMW equipped with a ZF 5HP19 transmission in the State of Connecticut for violations of Connecticut Common Law Of Unjust Enrichment)

71.   Plaintiff incorporates the above allegations by reference as if set forth herein at length.

72.   This Count is brought against BMW pursuant to the common law doctrine of unjust enrichment.

73. The BMW Vehicles are defectively designed due to a defect in the reverse clutch drum and assembly.

74. On or about July 8, 2007, Plaintiff first discovered that his Vehicle contained a defect regarding the reverse clutch drum assembly in his transmission. Prior to this date, Plaintiff had no reasonable means to learn of this defect as he did not experience any indication that there was an issue with his transmission.

75. Despite BMW's knowledge of the design defect in the Vehicles, BMW failed to acknowledge the existence of this design defect and failed to disclose the design defect to the Plaintiff and members of the Class. It was not until June of 2007 that BMW formally acknowledged, through an internal Technical Service Bulletin, that an issue even existed with the ZF Transmissions. Moreover, despite having issued the Technical service Bulletin concerning the ZF transmission in June 2007, BMW has failed to publicly take action and cure the defect through a recall to retro-fit the defective transmissions with new parts.

76. When purchasing a new or used Vehicle, Plaintiff and members of the Class, had no knowledge of the design defect, and conferred payments and non-gratuitous benefits, either directly or indirectly, upon BMW.

77. Plaintiffs and members of the Class directly or indirectly conferred upon Defendant, without knowledge of the design defect, payment for their Vehicles, by paying monies to retailers in exchange for their Vehicles, and a portion of such monies was paid to and was received by Defendant.

78. BMW accepted and retained the non-gratuitous benefits conferred by Plaintiff and members of the Class. Retaining the non-gratuitous benefits conferred upon BMW by Plaintiff and the Class, under these circumstances, made BMW's retention of the non-gratuitous benefits unjust and inequitable.

79. Because BMW's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, BMW must pay restitution in a manner established by the Court.

80.    Defendant's warranty is limited to defects in material and workmanship and accordingly does not govern the subject matter of this design defect litigation or preclude this cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court enter judgment and orders in his favor and against BMW as follows:

A.  An order certifying the Class and directing that this case proceed as a class action;

B.  Judgment in favor of Plaintiff and the members of the Class in an amount of actual damages to be determined at trial;

C.  An order enjoining BMW further wrongful conduct in the State of Connecticut;

D.  An order granting reasonable attorneys' fees and costs, as well as pre-and post judgment interest, to the extent permitted by applicable law; and

E.  Such other and further relief as this Court may deem appropriate.

## **DEMAND FOR A TRIAL BY JURY**

The Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated: November 13, 2007          PLAINTIFF
                                  DANIEL J. CORBETT

                                  By:s/s Patrick A. Klingman
                                      James E. Miller (ct21560)
                                      Patrick A. Klingman (ct17813)
                                      **SHEPHERD, FINKELMAN,**
                                      **MILLER & SHAH, LLC**
                                      65 Main Street
                                      Chester, CT 06412
                                      Telephone: (860) 526-1100
                                      Facsimile: (860) 526-1120

PAUL O. PARADIS
RICHARD DOHERTY
GINA M. TUFARO
JAMES SMITH
**HORWITZ, HORWITZ &**
**PARADIS,**
**Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Telephone: (212) 404-2200
Facsimile:  (212) 404-2226

**Attorneys for Plaintiff and the**
**Proposed Class**

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick A. Klingman
James E. Miller (ct17813)
SHEPHERD FINKELMAN MILLER & SHAH, LLC
65 Main Street
Chester, Connecticut  06412
Phone: (860) 526-1100
Fax: (860) 526-1120
E-mail: jmiller@sfmslaw.com